**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

### For the Seventh Circuit
### Chicago, Illinois 60604

Submitted February 6, 2008[*]
Decided February 8, 2008

**Before**

Hon. KENNETH F. RIPPLE, *Circuit Judge*

Hon. ILANA DIAMOND ROVNER, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

No. 07-1503

| | |
|---|---|
| SHAVAUGHN WILSON-EL,<br>    *Petitioner-Appellant,* | Appeal from the United States District Court for the Southern District of Indiana, Terre Haute Division |
| *v.* | No. 2:05-cv-256-LJM-WTL |
| ALAN FINNAN,<br>    *Respondent-Appellee.* | Larry J. McKinney,<br>*Judge.* |

**O R D E R**

Shavaughn Wilson-El is an Indiana inmate who was found guilty in a disciplinary proceeding of being a "habitual conduct rule violator." As a result of this determination, he lost good-time credits, was subjected to disciplinary segregation, and received a written reprimand. Wilson-El sought a writ of habeas corpus in the district court, contending that the proceeding was tainted by constitutional error. *See* 28 U.S.C. § 2254(a). The district court denied his request,

---

[*] After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2).

concluding that Wilson-El had received all of the process that he was due and that no irregularity occurred. Wilson-El appealed. In light of *Walker v. O'Brien*, 216 F.3d 626 (7th Cir. 2000), we permitted Wilson-El to proceed in this court without first obtaining a certificate of appealability. We now affirm.

In June 2005 Screening Officer Chapman prepared a conduct report charging Wilson-El with being a habitual rule violator. Chapman's report cited seven previous rule violations: five for refusing an order, one for presence in an unauthorized area, and one for insolence. All had occurred within six months of the date of Chapman's report. Upon receiving notice of the charge and his rights, Wilson-El waived his right to a 24-hour notice period prior to a hearing, entered a plea of not guilty, and requested a lay advocate, but he declined to request any witnesses or evidence. The hearing was then conducted on the same day.

The three-member conduct adjustment board (CAB) recorded Wilson-El's comments during the hearing. According to the CAB's report, Wilson-El said: "Some of those write ups are from when I just got out of the hole. I was not intending to get these write ups. Some of these are from being late from chow but I have a bad knee." The report also indicated that Wilson-El stated that he did not need a lay advocate present.

The CAB found Wilson-El guilty, relying on the conduct report and Wilson-El's own statement. The CAB recommended a deprivation of 120 days' earned good time credit, one year in disciplinary segregation, a written reprimand, and an imposition of a previously suspended sanction of six months in disciplinary segregation.

Wilson-El then appealed to the Facility Head, arguing that he did not receive an impartial hearing. Wilson-El contended that the CAB members were biased against him because two of them, R. Loudermilk and K. Hunter, had served on previous CABs that had adjudicated his guilt and because he had previously filed prison grievances or civil lawsuits against the CAB members. Wilson-El also argued that the CAB had deprived him of his right to have a lay advocate present at his hearing and had fabricated his statement that he did not wish to have such an advocate. Finally, Wilson-El contended that the sanctions imposed were excessive given the nature of the underlying charges against him.

The Facility Head denied Wilson-El's appeal, concluding that the conduct report was clear and supported the charge. The Facility Head also determined that the fact that two CAB members had sat on other boards did not make them biased—as long as they did not write the reports or witness the actual event they could participate on the board. The Facility Head did not believe that the CAB members lied about Wilson-El's refusal of a lay advocate. Finally, the Facility Head

concluded that the sanctions were not excessive because they were within the guidelines of Indiana's Adult Disciplinary Procedures (ADP).

Wilson-El appealed to the Final Reviewing Authority (FRA), presenting the same issues he brought to the Facility Head. The FRA similarly determined that there was no evidence of a procedural error or a violation of due process. However, the FRA dismissed one year of disciplinary segregation because the sanctions were "not consistent with previous Conduct Code (A) Habitual decisions."

Wilson-El filed a petition for relief in the district court, arguing that he received an unfair hearing because the CAB was biased against him, he was denied a lay advocate, and he received an excessive sanction. He also contended that in five of the cases supporting his habitual rule violator conviction he was erroneously found guilty. The district court denied Wilson-El's petition. First, the court concluded that Wilson-El received all the process to which he was entitled. Second, the court concluded that there was no arbitrary action or constitutional infirmity in any aspect of the charge, disciplinary proceeding, or sanctions.

On appeal Wilson-El presses the same arguments as he did in the district court. Our review of the district court's denial of habeas corpus relief is de novo. *Scruggs v. Jordan*, 485 F.3d 934, 938 (7th Cir. 2007). Prisoners in Indiana custody may not be deprived of good-time credits without due process. *Cochran v. Buss*, 381 F.3d 637, 639 (7th Cir. 2004). The due process requirement is satisfied with the issuance of advance written notice of the charges, a limited opportunity to present evidence to an impartial decision maker, a written statement articulating the reasons for the disciplinary action and the evidence justifying it, and "some evidence in the record" to support the finding of guilt. *See Superintend., Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *Wolff v. McDonnell*, 418 U.S. 539, 564, 566, 570-71 (1974); *Piggie v. Cotton*, 344 F.3d 674, 677 (7th Cir. 2003); *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000).

Wilson-El's arguments do not convince us that there was any due process violation or other defect in the proceedings against him. The fact that CAB members had previously adjudicated cases against him, or had been the subject of his complaints, does not constitute proof of bias. We have previously stated that prisons need not require staff members who have been sued by an inmate to disqualify themselves from a disciplinary action concerning that inmate; to do so would not only heavily tax the working capacity of the prison staff, it would provide an incentive for inmates to file lawsuits against prison officials. *See Piggie*, 342 F.3d at 667; *Redding v. Fairman*, 717 F.2d 1105, 1113 (7th Cir. 1983). In this case the prison followed procedures outlined in the ADP: the CAB members that Wilson-El challenges did not observe the conduct at issue or write reports documenting it. *See Redding*, 717 F.2d at 1113.

Similarly, Wilson-El presents no reason, other than his allegation of bias, to doubt the veracity of the CAB's report, which noted that Wilson-El told the CAB members that he had no need for a lay advocate. In any event, due process does not require that prisons appoint a lay advocate for a disciplinary hearing unless "an illiterate inmate is involved . . . or where the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case." *Wolff*, 418 U.S. at 570; *see also Miller v. Duckworth*, 963 F.2d 1002, 1004 (7th Cir. 1992). Wilson-El does not contend that either exception applied to him.

We also see no constitutional errors regarding Wilson-El's sanctions because they were not excessive. The FRA already responded to this argument by rescinding one year of disciplinary segregation. Wilson-El's resulting sentence was then considerably less than the maximum sanction authorized by the ADP for this type of offense. And the Eighth Amendment forbids only "extreme" punishment that is "grossly disproportionate" to the crime, *Koo v. McBride*, 124 F.3d 869, 875 (7th Cir. 1997) (citation and internal quotation marks omitted); *see also Leslie v. Doyle*, 125 F.3d 1132, 1134-35 (7th Cir. 1997), and that is not the case here.

Next Wilson-El contends that the evidence was insufficient to convict him of being a habitual rule violator because the reports in the underlying charges were false and retaliatory. But Wilson-El's sufficiency-of-the-evidence argument is procedurally defaulted because he did not present it in his appeal to the Facility Head. A petitioner is generally required to exhaust all of his available administrative remedies before seeking a writ of habeas corpus in federal court. 28 U.S.C. § 2254(b)(1)(A); *Picard v. Connor*, 404 U.S. 270, 275 (1971); *Moffat v. Broyles*, 288 F.3d 978, 981-82 (7th Cir. 2002). If the petitioner fails to do so and the opportunity to raise that claim in state administrative proceedings has lapsed, the petitioner has procedurally defaulted his claim, and a federal court is precluded from reviewing the merits of his habeas petition. *See Moffat*, 288 F.3d at 982; *Markham v. Clark*, 978 F.2d 993, 995-96 (7th Cir. 1992).

In any event, Wilson-El's conviction is adequately supported by the evidence of seven prior offenses, which are well documented in the record. *See Webb*, 224 F.3d at 652 ("Even meager proof will suffice, so long as the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary." (internal citation and quotation marks omitted)). We do not weigh the evidence supporting the conviction. *Id*. Accordingly, we will not disturb Wilson-El's habitual rule violator conviction.

AFFIRMED.